Gaston, Judge,
after stating the case as above, proceeded as follows: It was moved here by the connseL ior the peli-tioner, to dismiss the appeal, for the want of jurisdiction in this Court to revise the judgement rendered in the Superior Court. In support of this motion, it was insisted, that where a joint judgment is rendered against two or more defendants,one alone cannot appeal therefrom; that the cases of Hicks v. Gilliam, 4 Dev. 217, and Dunn & McIlwaine v. Jones, ante 154, have established this to be the law in cases of appeals from the County to the Superior Court; and that there being the same reason, the same law must obtain in regard to appeals from the Superior to the Supreme Court. It seems to us, that the positions asserted may be conceded, and yet the consequence contended for will not follow. Admit that the judgment in the County Court, from which Cawthom appealed, was a joint judgment, and that the Superior Court acquired no jurisdiction of the cause, because one defendant alone cannot appeal, yet the Superior Court did act thereupon and rendered a judgment therein, there being no other parties before it but the petitioner and Cawthorn; and from the judgment rendered in that Court, either of the parties who were alone before it might appeal to this Court. The cases quoted were decided here upon the ground that this Court had jurisdiction of them. In both there was a joint judgment against two defendants in the County Court, and one" only appealed to the Superior Court. In each there was a motion made to dismiss the appeal in the Superior Court, for want of jurisdiction. In the one case, the motion was refused; the cause was tried; and a final judgment rendered for the plaintiff, from which the defendant in the Superior Court pealed'. In the other, the motion to dismiss prevailed, and the defendant appealed therefrom. This Court took jurisdiction of both appeals, and in the exercise of that jurisdiction in the first case, reversed the judgment of the Superior Court, and proceeding to declare what judgment should be rendered in the Superior Court, directed that Court to dismiss the appeal and issue a procedendo to the County Court to award execution on the judgment there rendered; and in the second case affirmed the judgment of the Superior Court. *504 The motion to dismiss the appeal is therefore overruled.
®ut ^ kecomes necessary for the proper exercise of our jurisdiction, to determine what was the subject matter of the appeal from the County Court, and whether that appeal was regular. The legal remedy at common law to enforce an assignment of dower, where no par-t of it had been assigned, was by a writ of dower unde nihil habet, and the judgment for the demandant was, that she “ should recover seisin of a third part of the tenements demanded in severalty, by metes and bounds;” or if the judgment were rendered against tenants in common, “ should recover seisin of a third part of the tenements demanded, in three parts to be divided.” By that judgment, at common law, the suit was at an end, and an execution issued to enforce it, called a writ - of habere facias seisinam. 2 Saund. Rep. note 44, c. d. e. In pursuance of that writ, the sheriff assigned dower on the land, and she might recover possession thereof by ejectment. Since the statute of Merton, the widow might also have judgment for damages, and then the writs of seisin and of enquiry of damages were usually blended together in one writ. Where an excessive assignment was made by the sheriff, the heir might have a scire facias to obtain an assignment de novo. Stoughton v. Leigh, 1 Taun. 412. According to the opinions of some, he might have error, because of this appearing on the inquisition; while others have thought error would not lie, but a writ of admeasurement of dower, because the judgment and the award of execution were good—Styles 276—Palmer 266. Nay, Courts of Equity have entertained bills to be relieved against such assignments upon allegations of fraud and partiality—Hoby v. Hoby, 1 Ves. 218. Sneyd v. Sneyd, 1 Atk. 442. Our act of Assembly, (see 1 Rev. Stat. ch. 121, sec. 1,) regulating the mode of proceeding, directs a petition to be filed, setting forth the widow’s claim to dower, specifying the lands whereof her husband died seised, and praying that her dower may be allotted; and enacts that thereupon the Court shall issue their writ commanding the sheriff to summon twelve freeholders, who shall allot and set off to her one third part of the lands of which her husband died seised, and put her in possession of the same, which possession shall vest in her an estate for her natural *505 life in the third part aforesaid. The act is entirely silent as to any further proceedings upon the return of the inquisition or report of the jury. In a proceeding by petition under this act, as in a writ of dower at common law, the suit for dower is at an end by the judgment of the Court awarding dower. This is the only judgment to be rendered in that suit — any proceeding to set aside the inquisition taken under our act of Assembly — like the scire facias — or writ of error — or writ of admeasurement — or bill in Equity used to set aside the sheriff’s assignment in England — is in the nature of a new suit. Our act has not indicated the remedy for an illegal or 'excessive allotment of dower — but the usages of our Courts have defined it. In Eagles v. Eagles, 2 Hay. 181, it was decided, that when the report of the jury is returned, exceptions may be thereunto taken, and the Court will set aside the allotment and order a new allotment, if sufficient cause be^ shewn. This practice has been extensively followed since, and must now be regarded as firmly fixed.
The appeal taken from the County Court, is not therefore, as it seems to us, an appeal from the judgment in the suit‘for dower, but merely from the decision made upon the motion or application of Cawthorn, who had been one of the de- . fendants in that suit to set aside the inquisition or report of the jury returned therein, by which he alleged himself to be aggrieved. We can see no sufficient reason why any one aggrieved by the report of the jury may not be received to make this application, and when it is his application only, he alone can regularly appeal from the decision upon it. The appeal does not disturb the judgment that the widow recover her dower — nor vacate any thing that has been done in execution of that judgment. The appeal carries up the proceeding instituted for setting aside the inquisition — but it leaves the inquisition in full force, until the judment of the appellate court shall pass upon it.
Upon the main question involved in this controversy, the court feels no difficulty. In its opinion, the inquisition of the jury cannot stand. The dower of a widow, of common right, never did extend to more than a third part of the lands and tenements of her husband — and our Statutes have not *506 directly or indirectly, in any case, enlarged the right so as to comprehend more than a third. They declare that she shall be entitled to dower in the following manner, “ to wit, one third fart of all the lands &c. of which her husband died seised or possessed.” The writ to be awarded, is to allot to her “ one third part of the lands &c.,” and the estate vested by the execution of the writ, is declared to be an “ estate for the term of her life in the third part of her husband’s lands &c.” Very plain and uneqiávocal language must be found to warrant the supposed exception that where the whole of the husband’s real estate is necessary for the decent subsistence of the widow, then the whole may be allotted. To our apprehension, there is no language in the statute which justifies such an exception. At common law, the heir was not compellable to assign to the widow for her dower, the mansion house or any part thereof, but he might assjgn her dower in other lands, in allowance of the capital messuage. But if there were not any other lands of which she was dowable, and the heir assigned unto her a chamber in the capital mes-suage in the name of dower, and she agreed thereto, it was a good assignment. But she was not compellable to take the same, because it may be but trouble and vexation in a woman to have a chamber within the house of another man. See Perkins, sect. 406. Our act of 1784, 1 Rev. Stat. ch. 121, sec. 1, intended to give the widow the right to require, where it might be done consistently with the rights of the heirs, that the capital messuage should be assigned in part of her dower. Accordingly, after enacting that she-shall have a third — it proceeds to state that in that third shall be comprehended the mansion house and offices — or, if the whole cannot be so taken in, without injustice to the children, then such part or portion thereof only, as may be sufficient 'to afford her a decent residence. The mansion house — or a part of the mansion house — is not to be allotted in addition to her third — but in part of her third. Her claim is to a third only of her husband’s real estate, in the assignment of that third, if she wishes it, the mansion house, or so much thereof as is suitable, shall be included' — but she cannot have more than a third.
The particular circumstances set forth in the case, as in *507 fluencing the judgment of the Superior Court, would be entitled to great weight, if this were a matter of discretion.— But it is not. An inquisition allotting the whole of a man's lands under a writ to set off one third part thereof, is, in our judgment, directly against law, and must be set aside.
It is the opinion of this Court, that the judgment rendered in the Superior Court is erroneous, and must be reversed— and that the exception taken by the defendant to the assignment of dower which was returned to the County Court, is, in law, sufficient to set aside the same. This decision will be certified to the Superior Court, with directions to conform their judgment thereto, and to issue their writ to the County Court, to set aside the said assignment. The petitioner may then proceed to have a new assignment in the County Court according to law. .
Per Curiam. Judgment reversed.